Good morning. John Ellis on behalf of the appellate, Todd Sherman. Here, the district court imposed a condition to supervise your lease that is overbroad because it prohibits Mr. Sherman from accessing or possessing constitutionally protected materials. And here, as was the case, United States v. Nurkey, the district court's stated intent was to prevent Mr. Sherman from accessing materials that the court deemed pornographic. But by cross-referencing a statute, 18 U.S.C. section 2256, that defines sexually explicit conduct in terms of children, the actual condition imposed in this case is constitutionally overbroad because it does include materials larger than we would think of as pornographic and that are also protected by the First Amendment. Now, this case is controlled by Nurkey, but there is one significant difference that ultimately won't matter to the conclusion, and that is this. In United States v. Nurkey, the district court defines sexually explicit conduct by reference to 18 U.S.C. section 2256, which requires the sexually explicit conduct to be actual or simulated. Here, the district court was slightly different in that the imposition of the condition is referenced by 18 U.S.C. section 2257. Section 2257 is different only in that it requires that the conduct be actual and not simulated. But this court is to make all the difference, no? You would think, Your Honor, but at least United States v. Nurkey, that panel anticipated that actual and simulated weren't that different. There are at least two places in the opinion where the court made clear that they were addressing both actual or simulated conduct. Beginning at 1163 of Nurkey, the court found, quote, by employing the language from a statute intending to apply only to child pornography, the plain language of Nurkey's condition includes any depiction of actual or simulated adult sexual intercourse, however fleeting or veiled, and regardless of how insignificant. But that's the problem. You can't have a condition with respect to adult material that covers simulated, but this one doesn't. It's only actual. And so that seems to me to eliminate any problem on that front. You've got – I thought your whole argument rested on – what is it? It's 2A, you know, little v. I thought that was the provision that you were focused on. Yes, Your Honor. There are two parts, and that is the second part of the argument, which is the court in Nurkey also found that the problem was that the condition prevented what the court referred to as full frontal nudity, which would include the pelvic region, which is the little v that the court put. That is not what that provision covers, though, right? I mean, that's – you could go and look at a, you know, a painting in a museum and not have it be covered by that. I don't think you could, Your Honor. And what the court had concerned with in Nurkey, I think, was understandable. It said, however, fleeting. And that was the same reference to intercourse, and it was the same reference also to other issues of sexually explicit conduct. I think ultimately what the Nurkey court was trying to do, Your Honor, was trying to do an end run around trying to define pornographic because this court and other courts have struggled with defining that term in the past. And so I think that's why the Nurkey's court fix, as I will call it, was we're going to generally explain what pornographic means, and pornographic could include a number of things listed in 2256, but ultimately was left at the discretion of the probation officer so the court wouldn't get back in the business of defining pornography. I don't think that's a legitimate workaround. It might have been in Nurkey in part because the district court only had United States v. Riordan from 2003, which is a plain error case. And so I think the Ninth Circuit understood that the district court might not have had a good way to define sexually explicit conduct, and I think understood the district court was trying to do so, and the district court in Nurkey made clear it was going after pornographic. I'm still not following you through. Why is this case different from Nurkey? In what respect, Your Honor? Well, in the condition. It's generally almost the same condition, Your Honor, with the slight change of wording. Here it has to be actual, and Nurkey could be actual or simulated. So it's the same condition? Yes, Your Honor. Generally, I would say so. All right. Then what's wrong with it? Well, for the same reasons that this court found in United States v. Nurkey, Your Honor, it's overbroad in that it encompasses speech that would be protected by the First Amendment because it could include non-pornographic displays of sexual conduct. And that is the problem. And so I do think that the actual or simulated was taken into account by the court in Nurkey, both when dealing with intercourse or, as they put it, full frontal nudity, because I think the court understood reference to 2256 included the pelvic region. It wasn't just genitalia, and so that 2256 has to be broader than we would generally consider pornographic. I think that the court here could find a way to salvage the condition if it was to narrow it so it did not include First Amendment protected speech. Your client doesn't retain his full First Amendment rights after he's been convicted and placed on supervision, right? He may not. It depends. And that's where it really gets down to the intent of the court and the record evidence. There have been times where this court has found that a person on supervised release, probation or parole does not enjoy the full panoply of First Amendment protected rights under the right circumstances. Okay. But so, I mean, let's just put it in practical terms here and then tell me why the district court erred. As I understand it, what led to your client's criminal conduct here, it started out with something like as innocent as Playboy, I guess, right? Just, you know, kind of, I don't know, whatever you call that, adult pornography. Yes, Your Honor. Perfectly lawful. You can go and buy it. It's not illegal. You have maybe even have a First Amendment right to view that if you want. But anyway, that's what led him kind of down on this downward spiral. And what I think all the district court was trying to do is say, you are not to have access to that same kind of material for obvious reasons. And I don't know what better way the district court could have imposed that condition other than to adopt the definition from 2256. I agree with part of what you said, Your Honor. I think that the district court intended to prevent Mr. Nurki from accessing what we generally refer to as pornographic materials. However, 2257 fails for the same reason 2256 fails. And here's why. 2257's definition of sexually explicit conduct relies on the same definition at issue in Nurki, a statute 2256 that applies to child pornography, which is an easier definition to meet. So I agree with the court that I think that the district court stated intent was to prevent Mr. Sherman from accessing pornographic materials. But reference to 2257 is broader than what the court would be considered pornographic. And I would direct the court's attention back to Nurki at 1167. And I think there really what is clear from the Nurki court is this struggle to define what pornography means. Did you say 1167? Yes, sir. Okay, go ahead. Yes, Your Honor. And if you look at what the Nurki court struggled with at that time, it was really how do we define pornography in light of the fact that we've had problems in the past. And so I would agree that this court or the district court, it would have been improper to say not possess pornography because that would be subject to interpretation. However, the court could, I would suggest, add language that is currently in the condition that would make it comply with the First Amendment and not be overbroad. What I would suggest is, and this is taking language that Nurki cited to the Oxford English Dictionary. If the court was to add the following language to Condition 9, or so if we not possess or view any materials such as videos, magazines, photographs, computer images, or other matter that depicts sexually explicit conduct involving children, as defined by 18 U.S.C. section 2256 sub 2, and or actual sexually explicit conduct involving adults, as defined by 18 U.S.C. section 2257 H1, which, when taken as a whole, are intended to stimulate erotic rather than aesthetic or emotional feelings. And that's covered by 5, by the little 5, right? I would disagree, Your Honor, because the problem with little 5 and what the Nurki court made clear is that it could be fleeting. So you could have an entire work, for instance, American Beauty or Brokeback Mountain, and if you had 10 seconds within that video that could have something that was full frontal nudity, it would taint the whole work. I don't think that in a movie like that would be covered by little 5. I think it is, Your Honor. I'm almost out of time. I think it is, and the Nurki court found that it was. So I would agree with the Nurki court that it must be covered. No, Nurki found that because the definition there covered both actual and simulated. That was the problem. This only covers actual when it's when we're talking about adult material. That's why it's not going to be covered by little 5. Your Honor, I know I'm out of time. I would just cite the court back to Nurki at 1163 where it says actual or simulated. The court addressed it. That's what I'm saying. That's the problem there that is not present here. That's why this case is different. Your Honor, I would say this. I know I'm out of time. It's the or, not an and. If the court would have said it includes actual and simulated, I would agree with you. I think the use of or is important because I think you can read out the other words. Okay. We'll give you a minute for rebuttal. Let's hear from the government. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, the condition in this case is distinguishable from that in Nurki for two reasons. One, as you just pointed out, and it's a critical one. The condition here only applies to depictions of actual sexual intercourse or not simulated. So why is your opponent not correct in saying, let's say, I don't know why everyone picks American Beauty, but let's just pick that movie. Why would that not be covered by the condition that's imposed on this case? Well, because the actors in that movie are not actually having sex with each other in the movie. It's a simulation. Yeah, but we're talking about Little Five, right? We're not talking about Little Ones, which involves sexual intercourse, right? Obviously that's simulated, but what about, how does Little Five work then? It's just the. Well, Little Five prohibits lascivious exhibition of the genitals or pubic area of any person. Right, and the definition of that word is basically to try to arouse sexual desire in someone, right? And why wouldn't a depiction in a movie in mainstream release not be covered by that, even if you limit it to actual? It's hard to think of a movie that would have the lascivious display of genitals and still be sort of an R-rated movie. I mean, that by definition is moving you, what a reasonable person would, to understand that to be an X-rated film. So I think that. Are you saying, I mean, that's a distinction, it's either X-rated or R-rated? To some extent, but to some extent it doesn't even matter whether it's R-rated or X-rated. As Your Honor pointed out, there's restrictions on First Amendment rights that are appropriate in the supervised release area. So even if there were some movie where there was lascivious display of genitals that was still R-rated, that still had some First Amendment rights attached to it, the district court, the question here is whether the district court would still be within its discretion in restricting that lascivious display of genitals to this specific defendant, given his history and given what's in the record. So even if it did infringe to some extent, even if it didn't qualify as pornography, the court would still be well within its discretion here, given the fact that this defendant admitted to FBI agents that he started with Playboy, as he said, and then became desensitized over time and found more and more extreme adult pornography, which led to child pornography, which ultimately led to him taking photographs of children out on the street and masturbating to them and sort of fantasizing about the friend of his. But isn't the issue whether the defendant then is on notice of what he can do and not do? And is the condition sufficiently clear to allow the defendant to behave consistent with the condition? That's correct, Your Honor, and I believe it is in this case. Certainly, this condition is more clear than other conditions that this court has held in Bee and in Reardon and in Daniels. This one is specific. First of all, it doesn't cover simulated conduct, which, as I mentioned, would eliminate most of the concerns of NERCY about covering R-rated movies. In addition, the geographic scope of this condition is much more limited, and that, if you read NERCY throughout, that opinion was very concerned about this idea not only that you could be restricted from an R-rated movie, but you could be restricted from going to any place where that type of material is sold. Here, the court further narrowed this condition to include only places where the materials or entertainments are the primary material available. So I think when you read that combination of actual sexual conduct or lascivious exhibition of genitals, with this primary geographic location, a reasonable person is going to understand that to mean don't watch X-rated videos and don't go to porno shops, essentially. I'm not sure that there's a way to make this more clear as to what the defendant is or isn't allowed to do in this case. Like I said, it's certainly more narrow than other conditions this court has upheld in the past. And then finally, the third narrowing factor is that the court, when defense raised the possibility that he might need access to adult pornography as part of his rehabilitation, the court allowed that that would be something it would consider in a sort of more controlled setting. So that limitation to actual conduct, geographic limitation, and the possibility of rehabilitation all made this condition well within the district court's discretion. I'm happy to answer any other questions. No. Okay. It doesn't look like we have any. Let's give counsel Kerr to the defendant, a minute for rebuttal. Thank you, Your Honor. I'll be brief. If this court agrees that ultimately the condition as written by the district court implicates the First Amendment rights of Mr. Sherman, then I think that there are two choices. Limit the condition, if I suggested, or remand to the district court for further proceedings to determine whether or not there's record evidence that would be sufficient to curtail Mr. Sherman's First Amendment rights. Well, what kind of record evidence are you looking for? Your Honor, I think it would be more similar to what the court found in NERCI. Here the evidence is, as Judge Watford pointed out, that the playboy led to more extreme forms of pornography. Playboy, I think, would generally be considered pornographic under the definition that I've suggested. And so if the condition by the district court was meant to be broader and would include works of art or pieces of movies that are broader than what we consider pornographic, if Condition 9 includes those, then I don't think the record here is sufficient to curtail that. Okay. Thank you very much. The case just argued is submitted.
judges: Tashima, Watford, Robreno